# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROCHELLE GARRISON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DOLGENCORP, LLC, and SANDRA BELL, )<br>)<br>Defendants. ) | No. 4:16-CV-00349-DGK |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action arises out of Plaintiff Rochelle Garrison's ("Garrison") employment with Defendant Dolgencorp, LLC ("Dolgencorp"). Garrison claims she was forced to resign her position because she was not offered leave under the Family and Medical Leave Act ("FMLA"). Garrison sued Dolgencorp and her supervisor, Defendant Sandra Bell ("Bell"), for violations of the FMLA, the Americans with Disabilities Act ("ADA"), and the Missouri Human Rights Act ("MHRA").

Now before the Court is Defendants' motion for summary judgment (Doc. 74) and Defendants' motion to strike (Doc. 87). For the reasons set forth below, the Court GRANTS both motions.

## Undisputed Material Facts[1]

On April 22, 2013, Garrison began working at a Dollar General store as a full-time lead sales associate, reporting to the store manager, Bell. Her position was one of four positions that had keys to the store—known as key-holders. The other key-holders were Bell, the assistant

---

[1] The Court excluded asserted facts that were immaterial to the resolution of the pending motion, asserted facts that were not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has included reasonable inferences from material facts not in dispute and proposed facts the opposing party has not controverted properly.

manager, and a part-time lead sales associate. Because of the unique responsibilities of key-holders, their vacations had to be coordinated so that at least one key-holder was available to work each day. As it relates to this motion, the assistant manager was scheduled for vacation May 10 through May 16, 2014, and Bell was scheduled for vacation May 15 through May 19, 2014.

When Garrison was hired, she was issued an employee handbook. She also had access to the handbook through an online system. The handbook reviews the types of leave available and in three separate sections directs employees interested in leave to contact Matrix Absence Management ("Matrix"), Dolgencorp's third-party leave administrator. In one section, the handbook states, in boldface type: "To request FMLA Leave, Company Medical Leave, or any other leave of absence, you should notify your supervisor and immediately contact Matrix . . . ." (Doc. 75-3 at 11). In a second section: "After notifying his or her manager of the need for leave, the employee should immediate initiate a leave request with Matrix . . . ." (*Id.* at 27). In a third section, it repeats that in order to report the need for leave and to initiate the approval process, the employee must contact Matrix after notifying the employee's manager.

Bell stated Garrison told her she suffered from anxiety, depression, and headaches, and that she had seen a doctor for those problems.

Garrison visited her doctor's office several times from April to June 2014 for different medical issues. On April 8, 2014, Garrison was treated for sinus congestion, sore throat, headaches, and a cough. At that visit, she stated she gets headaches, and while she usually can continue working when they occur at work, occasionally, they are so severe that they require her to lie down. She was given two prescriptions to address the headaches, one for tension

headaches, and one for migraine headaches. She was instructed to follow-up in one month if her symptoms did not improve, otherwise in three months.

On May 1, 2014, Garrison returned to her doctor's office for a lump she found in her breast, headaches, and depression. As for the headaches, she stated the medication works but that it makes her tired; as for the depression, she stated she was doing well but having an increase in anger and sad days. She was asked to monitor the lump in her breast.

After that visit, Garrison and Bell exchanged text messages. Garrison asked: "How can I request a leave of absence[?]" (Doc. 81-6 at 2). Bell responded that she was not sure, that she would talk to the district manager, and asked when Garrison wanted to take the leave. Garrison responded:

> "When ever u guy's [sic] get back from your vacation so it's not putting u in a bind[.] I hate to even do this but it's this way and try to figure out what all is wrong with me or quit[,] and I really don't want that[.] I went to the dr today again and this is what me[,] bo [Garrison's husband,] and dr decided was the best and easiest way[.]"

(*Id.*) Bell repeated that she would talk to the district manager and agreed that it would be better if Garrison could wait to take leave until after Bell and the assistant manager were back from their scheduled vacations.

Garrison worked on May 3, 2014, and with Bell's approval, left early that day. Garrison does not recall why she left early, but Bell states it was a non-medical reason.

Garrison worked her scheduled shift on May 5, 2014, and that evening sent Bell two text messages. In the first, Garrison asked Bell if she had spoken with the district manager about a leave of absence, and in the second asked if Bell was telling people that Garrison intended to quit. Bell did not respond to these text messages. On May 6, Garrison again asked Bell by text

3

message if Bell had spoken with the district manager. Bell responded: "Yea and there is no LOA." (*Id.* at 6). Garrison responded: "Then what about fmla[?] Ok do u not want me their[sic] anymore[?]" (*Id.* at 4). Bell stated: "Read the employee handbook[.] I want [you] there if you can do the job and not be sick all the time[.]" (*Id.*) Garrison replied that she might have to undergo brain scans and a mammogram because she found a lump in her breast and then stated, "I hardly ever call in sick." (*Id.*) Bell then asked Garrison to meet her at the store so they could discuss the options for leave.

Earlier that day, Bell hired a new part-time lead sales associate. Bell planned to have the new associate replace the existing part-time lead sales associate, but after Garrison resigned he was ultimately assigned her shift.

On May 7, 2014, Garrison and Bell met at the store to discuss the leave options. Garrison told Bell she was seeking leave because of new anxiety and depression medication. Bell and Garrison reviewed the leave options in the employee handbook. Bell told Garrison she did not believe Garrison qualified for any of the leave options, but that Garrison should call human resources[2] to be sure. Bell told Garrison that it was important that she work her scheduled shifts because she was one of the key-holders and that she could not remain a key-holder if she could not work her assigned schedule. Garrison does not recall much of this conversation, but states Bell told her she would be demoted when Bell returned from her vacation and that Bell had already hired Garrison's replacement. She does not remember reviewing the handbook or that Bell told her to call human resources.[3]

---

[2] In several documents, Bell wrote she instructed Garrison to call Matrix, however in her deposition she clarified that she did not say "Matrix" when she met with Garrison, rather, she said "HR," meaning human resources. In fact, Bell stated she did not know Matrix and human resources were different until after this lawsuit was filed.

[3] "An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur." *To v. U.S. Bancorp*, 651 F.3d 888, 892 n.2 (8th Cir. 2011).

4

On May 12, 2017, Garrison went to the emergency room for gastritis and anxiety and was released after an hour. The next day, Garrison visited her doctor's office following up from her emergency room visit and was told to return in a month. After her doctor's appointment, she sent Bell a text message requesting vacation for the remainder of the week. Bell denied the request because the assistant manager was on vacation and Bell was scheduled for vacation as well. In response, Garrison sent Bell a text message stating: "I am going to have to quit[.] I can't do this anymore[.] My mind is going a hundred different ways[.] [P]lease don't be mad but I have to get better and I'm just getting worse again[.] I'm sorry." (*Id.* at 7). Garrison resigned the next day.

It is unclear whether Garrison was scheduled to work May 12 and 13, but for purposes of this motion, the Court assumes she was scheduled to work and that she took vacation those days.[4]

On June 3, 2014, Garrison followed-up with her doctor regarding daily headaches. She stated none of the medication was working and that she quit her job because of the headaches. She also complained of "a sense of severe anxiety." On June 16, 2014, she returned to her doctor's office and was diagnosed with headaches, reflux, and blurred vision.

Garrison never contacted Matrix to initiate a leave request. Also, she stated she did not read the employee manual. After her resignation, she filed a complaint with the Missouri Commission on Human Rights and received a right to sue letter.

Garrison filed a three-count lawsuit in the Circuit Court of Lafayette County, Missouri alleging: (1) disability discrimination and retaliation in violation of the MHRA against both

---

[4] Bell stated Garrison worked her scheduled shift on the 12th, (Docs. 75 at 14, 75-3 at 3), and Garrison admitted that fact (Doc. 81 at 46). But, in Defendants' brief they state she was not scheduled to work the 12th or the 13th. (Doc. 86 at 21). Adding to the confusion, Garrison asserts she took vacation the 12th and 13th. (Doc. 80 at 20).

5

Defendants; (2) disability discrimination and retaliation in violation of the ADA against Dolgencorp; and (3) "violation of FMLA against both Defendants" (Doc. 1-2). Defendants timely removed this action to this Court (Doc. 1).

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Summary judgment is also appropriate when the plaintiff fails to establish any element of her prima facie case. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998). A court must view the facts in light most favorable to the nonmoving party and allow the nonmoving party to benefit from all reasonable inferences to be drawn from the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986).

**Discussion**

**I.   Defendants' motion to strike is granted.**

First, the Court addresses Defendants' motion to strike (Doc. 87). Defendants move to strike all medical records that pre-date April 8, 2014, because Garrison did not provide those records during discovery. Defendants requested all medical records related to the health conditions Garrison's claims rely on. The earliest medical records Garrison provided Defendants was dated April 8, 2014, however she included earlier records in her opposition to summary judgment. Defendants argue Garrison's failure to provide medical records as to treatment that pre-dates April 8, 2014, has prejudiced their ability to defend this lawsuit and asks the Court to strike those records.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The offending party has the burden to demonstrate that the failure to disclose was substantially justified or harmless. *Fu v. Owens*, 622 F.3d 880, 883–84 (8th Cir. 2010).

Garrison states she requested records from her doctor dating back to April 1, 2013, but that the doctor did not to provide them. She argues Defendants have not been prejudiced because they should have uncovered the earlier records were missing because they had the medical records prior to taking Garrison's deposition. She also argues that she testified in her deposition that she was taking medication for her health conditions in 2013, so the Defendants were aware of her treatment history. Garrison has not demonstrated her failure to provide the medical records prior to April 8, 2014, was substantially justified or harmless. Thus, Defendants' motion to strike is GRANTED.

## II. Defendants' motion for summary judgment is granted.

Next, the Court considers Defendants' motion for summary judgment. Defendants argue Garrison has not established the essential elements of her three claims, and thus, summary judgment is proper. The Court considers each claim below.

### A. Summary judgment is granted on the FMLA interference claim.

Garrison alleges Defendants interfered with her FMLA rights by failing to provide her the required notices under the FMLA, failing to provide her FMLA leave, and by telling her she would be demoted.

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To succeed

on this claim, Garrison must show: (1) she was eligible for FMLA leave, 29 U.S.C. §§ 2611(2), 2612(a)(1); (2) Defendants were on notice of her need for FMLA leave, 29 C.F.R. § 825.302; and (3) Defendants denied her benefits to which she was entitled. *Hasenwinkel v. Mosaic*, 809 F.3d 427, 432 (8th Cir. 2015).

Viewing the record in light most favorable to Garrison, the Court finds she has not established she suffered from a serious health condition, nor did she give notice to Defendants that she may require FMLA leave.

### 1. The undisputed material facts do not establish Garrison suffered from a serious health condition.

A serious health condition is a prerequisite for FMLA leave. *Rask v. Fresenius Med. Care N. America*, 509 F.3d 466, 472 (8th Cir. 2007). Under the FMLA, a "serious health condition" means an "illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital . . . or . . . continuing treatment by a health care provider. 29 U.S.C. § 2611(11). Garrison's claim is based on continuing treatment. The relevant regulations list several categories of continuing treatment, Garrison argues she meets two: (1) a period of incapacity of more than three consecutive days; and (2) chronic conditions. 29 C.F.R. § 825.115(a), (c). Both subsections require a showing of incapacity and treatment by a healthcare provider. Incapacity requires that the plaintiff was unable "to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i).

Garrison alleges she suffers from the serious health conditions of anxiety, depression, and migraine headaches and that she was incapacitated from May 12 through May 14, 2014.

The days Garrison missed work for the emergency room visit and follow-up doctor's appointment may establish a period of incapacity due to her anxiety, but there is nothing in the

record stating she has received ongoing treatment for anxiety. *See* 29 C.F.R. § 825.115(c) (chronic conditions prong requires periodic visits for treatment by a healthcare provider); (a) (incapacity and treatment prong requires treatment two or more times by a health care provider or treatment on one occasion by a health care provider which results in a regimen of continuing treatment). Thus, the undisputed facts do not establish Garrison's anxiety is a serious medical condition because she has not received ongoing treatment for that condition.

Her depression and migraine headaches are not serious medical conditions because she has not established they have resulted in a period of incapacity. *See* 29 C.F.R. § 825.115(c) (chronic conditions prong requires a period of incapacity or treatment for such incapacity); (a) (incapacity and treatment prong requires a period of incapacity of more than three consecutive days). There is no evidence in the record that these conditions have caused her to miss work, have prevented her from performing other daily activities, or that her doctor issued a work restriction. *See, e.g.*, *Wheat v. Union Pac. R.R. Co.*, No. 16-00222-CV-W-GAF, 2017 WL 2964722, at *7 (W.D. Mo. June 19, 2017) (finding plaintiff did not suffer from a serious health condition because she did not establish she suffered three consecutive days of incapacity and her doctor did not order any restrictions or limitations); *Beal v. Rubbermaid Commercial Prod. Inc.*, 972 F. Supp. 1216, 1224 (S.D. Iowa 1997), *aff'd,* 149 F.3d 1186 (8th Cir. 1998) (finding one plaintiff did not suffer a serious medical condition because she was not absent from work and the other plaintiff did not suffer a serious medical condition because she was able to meet her family needs).

### 2. Garrison did not put Defendants on notice that she may qualify for FMLA leave.

"Before an employee can claim FMLA protection, . . . the employee must put the statue in play—she must notify her employer that she may need FMLA leave." *Murphy v. FedEx Nat'l*

*LTL, Inc.*, 618 F.3d 893, 900 (8th Cir. 2010). The employee must "indicate both the need and the reason for the leave, and must let [her] employer[] know when [she] anticipate[s] returning to [her] position." *Woods v. DaimierChrysler Corp.*, 409 F.3d 984, 990-91 (8th Cir. 2005). "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Rask*, 509 F.3d at 472. "The adequacy of an employee's notice requires consideration of the totality of the circumstances and is typically a jury question." *Murphy*, 618 F.3d at 903 (8th Cir. 2010). However, when the employee does not provide sufficient details as to her medical condition, the court may find as a matter of law that the notice was insufficient. *See, e.g.*, *Woods*, 409 F.3d at 992–93 (finding doctor's note stating that employee should not work, but offering no diagnosis or other detail, did not provide employer with sufficient notice); *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) (finding notification that employee was "sick," without more, is insufficient notice).

Looking at the totality of the circumstances, the Court finds Garrison did not give adequate notice of her need for FMLA leave. First, Garrison did not contact Matrix as instructed by the employee handbook. *See* 29 C.F.R. § 825.302(d) ("Where an employee does not comply with the employer's usual notice and procedural requirement, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."). Second, Bell's prior knowledge that Garrison suffered from some medical conditions was not sufficient to constitute notice. Third, there is nothing in the record that prior to May 12, Garrison missed work due to her medical conditions, she even stated, "I hardly ever call in sick." Finally, Garrison's requests for time off lack the necessary information to qualify as notice under the FMLA.

Garrison did not contact Matrix to request a leave of absence because, she argues, the handbook is ambiguous and unclear as to the process to request leave. She argues the handbook states employees "should" contact Matrix to initiate leave, suggesting that the employee *may* contact Matrix, not that they must. This argument is unpersuasive. The policy repeatedly states Matrix is the point of contact for FMLA leave requests and that the process is to contact Matrix alone, or along with, the employee's manager.

Garrison next argues that Bell "knew" of her medical conditions so she was already on notice her conditions required FMLA leave. Bell's knowledge that Garrison suffered from migraines, anxiety, and depression, and that she had seen a doctor for those conditions, does not establish Bell was aware that her conditions were of a serious nature and may require FMLA leave. *See Rask*, 509 F.3d at 472-73 (finding employee who notified employer she had depression did not provide adequate notice because depression is a condition that requires the employer have additional details before being on notice that the employee is unable to work); *but see Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 852-53 (8th Cir. 2002) (finding employee had given adequate notice that she might be entitled to FMLA leave when she stated she would be absent from work because of her "depression again" when previously she had missed work because of that condition).

In the requests Garrison did make for time off, she failed to provide the necessary information for Bell to determine her condition required FMLA-protected leave. Looking first at Garrison's text messages, the request on May 1 did not indicate the reason for leave or how much time Garrison needed. In fact, she stated her leave could wait until Bell and the assistant manager returned from their scheduled vacations. The request on May 6 also lacked details as to the reason or length of leave needed.

11

Turning next to the meeting between Bell and Garrison on May 7, Garrison told Bell she wanted leave because of her new medication however, she did not state how much leave she needed or that her condition was serious. *See, e.g.*, *Rask*, 509 F.3d at 472-73 (finding employee's statement that she had been diagnosed with "depression" was insufficient to put her employer on notice); *but see Thornson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000) (finding the employee's submission of two doctor's notes advising that she should not work put the employer on notice that she might be eligible for FMLA leave).

Finally, Garrison's request for vacation on May 13, fails to establish Garrison gave notice of her need for FMLA leave. The record states only that Garrison requested paid vacation for the remainder of the week and "Bell told Garrison 'No.'" (Doc. 81 at 21). This request does not state the reason for requesting vacation, and if the request was for a medical condition, that the medical condition is serious.

Viewing the totality of the circumstances, Garrison has failed to show she provided notice to Defendants that she had a "serious health condition" rendering her "unable to work" because she did not contact Matrix, did not miss work due to her medical conditions, and in her requests for time off, she did not provide the reason and duration of leave needed.

### B. The undisputed facts do not establish a failure to accommodate claim under the ADA.

Garrison alleges Defendants violated the ADA by discriminating against her based on her alleged disability[5] by failing to provide her a leave of absence.

To state a failure to accommodate claim under the ADA, the plaintiff "must establish both a prima facie case of discrimination based on her disability and a failure to accommodate

---

[5] In her complaint, Garrison only alleges her migraine headaches and anxiety attacks where disabling conditions, however in her brief she argues her depression was also disabling. For completeness, the Court considers all three conditions.

it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). To establish a prima facie case of ADA discrimination based on disability, the plaintiff must show: (1) a qualifying disability; (2) qualifications to perform the essential functions of her position with or without a reasonable accommodation; and (3) an adverse employment action due to her disability. *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010).

Defendants argue Garrison has not established the essential elements of her claim including that she is disabled, she suffered an adverse employment action, and that she requested a reasonable accommodation. After review of the complete evidentiary record, the Court finds there is a dispute of material fact as to whether Garrison was disabled, however, she did not suffer an adverse employment action, nor she did she request a reasonable accommodation, and as such, summary judgment on this claim is granted.

**1. There is a dispute of material fact as whether Garrison was disabled.**

The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g). Courts must construe disability "in favor of broad coverage of individuals," *id.* § 12102(4)(A), however, "not every impairment will constitute a disability within the meaning of [the ADA]," *id.* § 1630.2(j)(1)(ii).

Garrison does not point to any portion of the record that establishes she suffered from an actual or perceived impairment. Nonetheless, viewing the facts in light most favorable to Garrison, a reasonable jury could find that Garrison was disabled because there is a record of treatment for her migraines and depression and she missed work for two days due to her anxiety.

**2. Garrison did not suffer an adverse employment action under the ADA.**

An adverse employment action is one that causes a material change in the terms or conditions of employment. *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045 (8th Cir. 2002). To be "adverse," the action "need not always involve termination or even a decrease in benefits or pay." *Phillips v. Collings*, 256 F.3d 843, 847 (8th Cir. 2001). However, "not everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (discussing an unlawful retaliation claim in the context of Title VII) (citations omitted).

Just like any other discharge, a constructive discharge is an adverse employment action. *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995). A constructive discharge occurs "when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." *Smith v. World Ins. Co.*, 38 F.3d 1456, 1460 (8th Cir. 1994). A constructive discharge takes place only when a reasonable person would find working conditions intolerable. *West*, 54 F.3d at 497. Constructive discharge also requires "considerably more proof than an unpleasant and unprofessional environment." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 936 (8th Cir. 2002). "An employee may not be unreasonably sensitive to [her] working environment." *West*, 54 F.3d at 497. "Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." *Id.* at 498. "An employee who quits without giving [her] employer a reasonable chance to work out a problem is not constructively discharged." *Id.*

Garrison alleges Defendants demoted and constructively discharged her due to her medical conditions. She argues her working conditions were intolerable because she was told she would be demoted, she believed Bell told others she was quitting, a new person was hired

that she believed was her replacement, and Bell told her she didn't believe she qualified for any of Dolgencorp's leave options.

The record does not support a claim for constructive discharge because a reasonable person would not find Garrison's working conditions intolerable. *Cf. Summit v. S-B Power Tool, (Skil Corp.), a Div. of Emerson Elec. Co.*, 121 F.3d 416, 421 (8th Cir. 1997) (holding an employee being told that she will be fired for cause does not, in and of itself, constitute constructive discharge). Also, Garrison did not give Bell a reasonable chance to address her desire to take vacation, nor did she attempt to negotiate an alternative solution. *See Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."). Thus, the Court finds Garrison has not established she was constructively discharged.

Turning next to Garrison's argument that she was demoted, Garrison relies on Bell's statement that she would no longer be a key-holder if she could not work her scheduled shift coupled with the timing of Bell hiring a new associate, to support her claim that she was demoted. Indeed, Garrison acknowledges she was not demoted, and instead speculates that she would have been demoted had she not preemptively quit. She does not state how these two events resulted in a material change in the terms or conditions of her employment. Thus, Garrison has not established how her alleged demotion was an adverse employment action. Because Garrison cannot establish there was an adverse action taken against her, her discrimination claim fails as a matter of law.

### 3. Garrison did not request a reasonable accommodation.

Even if Garrison could establish a discrimination claim, her failure to accommodate claim fails because she did not request a reasonable accommodation. To establish a failure to accommodate claim, the plaintiff must first make a facial showing that a reasonable accommodation is possible. *See Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003). If that showing is made, the burden of production then shifts to the employer to show that it was unable to accommodate the plaintiff. *Id*. The employee must initiate the accommodation process by making the employer aware of the need for an accommodation, *see Peyton v. Fred's Stores of Ark.*, 561 F.3d 900, 903 (8th Cir. 2009), and provide relevant details of the employee's disability including the reasons that the disability requires the requested accommodation. *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir. 2007). Finally, the employee must make a facial showing that the requested accommodation is "reasonable." *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004). An employer is only required to provide a reasonable accommodation, not the particular accommodation the employee requests or deserves. *Rehrs v. Iams Co.*, 486 F.3d 353, 359 (8th Cir. 2007).

Garrison argues the text messages she sent to Bell requesting leave were a request for a disability accommodation.[6] Garrison does not state which text message was a request for leave, so the Court considers the messages sent on May 1, May 5, May 6, and May 13.

Garrison has not established her text messages to Bell were a request for a reasonable accommodation because none of them specify relevant details about her disability and the reason that the disability required a leave of absence. The message on May 1, only asks for leave that

---

[6] Garrison's argument that Defendants did not engage in the interactive process under the ADA fails because she did not request an accommodation. *See E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014) (finding that in order to find the employer failed to engage in the interactive process, the employee must first request an accommodation).

would begin after the assistant manager and Bell's vacation. That message does not provide relevant details about Garrison's medical conditions or why leave would accommodate those conditions. The message on May 5, fails for the same reasons. In the message on May 6, Garrison requests leave and states she found a lump in her breast. This condition is unrelated to Garrison's alleged disabling conditions and does not state why this condition requires a leave of absence. The message on May 13, requested vacation but did not state why her conditions required leave or how the leave would accommodate her conditions. *Rask*, 509 F.3d at 470 (finding plaintiff failed to provide employer with sufficient information to request a reasonable accommodation even through plaintiff told employer she: (1) had depression; (2) was having problems with her medication; and (3) requested intermittent leave, because she did not state the resulting limitations of her disability).

Assuming Garrison did make an accommodation request on May 13, it was not reasonable. To survive summary judgment, the requested accommodation must be "reasonable on its face." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). "[A] medical leave of absence might, in some circumstances, be a reasonable accommodation." *Brannon v. Luco Mop Co.,* 521 F.3d 843, 849 (8th Cir. 2000). However, "an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated." *Rehrs*, 486 F.3d at 357. If the employer demonstrates that the accommodation would impose an undue hardship on the operation of the business, the employer is not required to make the accommodation. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999).

Here, Garrison provides no argument that her request for immediate vacation was reasonable. However, considering the circumstances, the Court finds it was not. To provide Garrison this accommodation, Bell or the assistant manager would have had to return from

17

vacation early, depriving them of an opportunity, or the fourth key-holder would have had to work more hours. Also, by allowing Garrison the time off she requested, the business would lack necessary coverage of a key-holder, imposing an undue hardship on the operation of the store. Given the circumstances surrounding Garrison's request for immediate vacation, it was not reasonable.

The Court finds a reasonable jury could find Garrison suffered from a disability because she has a record of treatment for migraines and depression, and her anxiety caused her to miss work. However, summary judgement on the reasonable accommodation claim is granted because the Court finds she did not suffer an adverse employment action or request a reasonable accommodation.

**C. The undisputed facts do not establish a discrimination claim under the MHRA.**

Garrison alleges Defendants violated the MHRA by discriminating against her based on her alleged disability. To state a discrimination claim under the MHRA, the plaintiff must show: (1) she is legally disabled; (2) she was discharged; and (3) the disability was a factor in her discharge. *Hervey v. Mo. Dept. of Corrections*, 379 S.W.3d 156, 160 (Mo. 2012). Under the MHRA, a disability is "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job . . . ." Mo. Rev. Stat. § 213.010(4).

As explained above, there is a dispute of material fact as to whether Garrison was disabled. However, she cannot establish she was constructively discharged and thus, summary judgment on this claim is granted.

**D. Garrison cannot establish a retaliation claim under either the ADA or the MHRA.**

Claims of retaliation under the ADA and the MHRA require the plaintiff to establish she suffered an adverse employment action. *See Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (ADA retaliation claim requires an adverse employment action); *Minze v. Mo. Dep't of Pub. Safety*, 437 S.W.3d 271, 275 (Mo. Ct. App. 2014) (MHRA retaliation claim requires an adverse action). As explained above, because Garrison has not established she suffered an adverse employment action, and Defendants' motion for summary judgment on the retaliation claims under the ADA and MHRA is granted.

**Conclusion**

Accordingly, Defendants' motion for summary judgment (Doc. 74) and motion to strike (Doc. 87) are GRANTED.

**IT IS SO ORDERED.**

Date: December 6, 2017           /s/ Greg Kays
                                 GREG KAYS, CHIEF JUDGE
                                 UNITED STATES DISTRICT COURT